UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHERRI DEANNE YOAKUM | CIVIL ACTION |
| VERSUS | |
| NANCY A. BERRYHILL, COMM'R OF THE SOCIAL SECURITY ADMINISTRATION | NO. 20-00824-BAJ-SDJ |

### RULING AND ORDER

Plaintiff Sherri Deanne Yoakum seeks judicial review of a final decision of the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g) upholding the cessation of Plaintiff's supplemental security income ("SSI"). (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-4), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the decision of the Commissioner is hereby **VACATED**, and Plaintiff's appeal is **REMANDED** for further proceedings consistent with this opinion.

### I. PROCEDURAL HISTORY

Plaintiff was originally awarded SSI benefits in a decision dated February 26, 2015. (Tr. 179, Exhibit B1A). Plaintiff's disability was determined to have started as of November 13, 2012. (Tr. 179). That decision also stated that medical improvement

1

was expected with appropriate treatment and recommended a continuing disability review in 12 months from the date of that decision. (Tr. 184-85). After a continuing disability interview, Plaintiff was deemed no longer disabled as of September 15, 2017. (Tr. 586, 186). Plaintiff requested a hearing, and after various delays, a hearing was held on February 4, 2020. (Tr. 113). After that hearing, the Administrative Law Judge ("ALJ") issued a decision on May 4, 2020, terminating Plaintiff's SSI benefits on the basis that there had been medical improvement in her impairments and her ability to work had increased. (Tr. 29). Plaintiff requested review by the Appeals Counsel, which was denied on October 20, 2020. (Tr. 1). Plaintiff appears now to appeal the cessation of benefits to this Court.

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). The U.S. Court of Appeals for the Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only

where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).

Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."). If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). But if the Commissioner fails to apply the correct legal standards or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

In the case of a determination of continuing disability, the Fifth Circuit has explicitly addressed the scope of a district court's review of the termination of a person's benefits. *See Taylor v. Heckler*, 742 F.2d 253, 256 (5th Cir. 1984) (citing *Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984)). Even though the burden of proving disability is initially on a Social Security claimant, "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Buckley*, 739 F.2d at 1049 (quoting *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973)). In

other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved. *Taylor*, 742 F.2d at 255.

## III. THE ALJ'S DETERMINATIONS

When an individual has been found to be entitled to SSI benefits, their continued entitlement to those benefits is reviewed periodically to determine whether the recipient still qualifies for benefits on the basis of disability. 20 C.F.R. § 416.994(a). The Social Security Administration may terminate benefits if the agency concludes that the claimant's impairment "has ceased, does not exist, or is not disabling . . . ." 42 U.S.C. § 423(f). In an initial claim for SSI benefits, in which it is determined for the first time whether the claimant is disabled and should be granted benefits, the Commissioner applies a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. In cases of continuing disability, however, the Commissioner uses a seven-step evaluation process to determine whether the claimant continues to be disabled. The Commissioner, through an ALJ, uses these steps to determine:

(1) whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment;

(2) if impairments do not meet a listing, whether there has been medical improvement as compared to the claimant's disabilities at the time of the last favorable decision;

4

(3) if there *has* been medical improvement, whether it is related to the claimant's ability to work;

(4) if there *has not* been medical improvement, or there is medical improvement unrelated to ability to work, whether exceptions to medical improvement apply;

(5) whether all of the claimant's current impairments in combination are severe;

(6) if impairments are severe, whether the claimant has the residual functional capacity ("RFC") to perform past relevant work;

(7) whether the claimant's RFC allows claimant to perform other work.

*See* 20 C.F.R. § 416.994(b)(5).

The "last favorable decision" referenced in Step 2 is called the comparison point decision ("CPD") and is the point against which current impairments are compared to determine medical improvement. The CPD here is the decision dated February 26, 2015. (Tr. 175). At the time of the CPD, Plaintiff had the following medically determinable impairments: bipolar disorder, major depression, generalized anxiety disorder, panic disorder, posttraumatic stress disorder (PTSD), borderline medical intellectual functioning, endometriosis, chronic lower back pain, and chronic obstructive pulmonary disease (COPD). (Tr. 34). In the present decision, the ALJ determined that "since September 15, 2017, [Plaintiff] has had the following medically determinable impairments: sciatica (called 'chronic lower back pain' at

5

CPD), COPD, tobacco dependence syndrome, hypertension, heart failure, hiatal hernia with gastroesophageal reflux disease, cannabis use disorder, seizures, benzodiazepine use disorder, bipolar disorder/depressive disorder, generalized anxiety disorder, borderline personality disorder/personality disorder, PTSD, and headaches." (Tr. 34). He further found that during the relevant period, there was no objective evidence—standardized testing, diagnoses, or targeted treatment recommendations—for endometriosis, panic disorder, borderline intellectual functioning, or anorexia. (Tr. 34).

The ALJ found that Plaintiff's current impairments do not meet or equal the severity of listed impairments. (Tr. 34-36). Comparing Plaintiff's RFC at the time of the CPD and medical evidence of record for the period of September 15, 2017, onward, the ALJ determined that medical improvement occurred on September 15, 2017, and that the improvement was related to Plaintiff's ability to work because it improved her RFC. (Tr. 36-37). Of Plaintiff's current impairments, the ALJ found all but headaches to be severe. (Tr. 37). Finally, the ALJ discussed Plaintiff's RFC based on her current impairments and found that Plaintiff has been able to perform work available in the national economy since September 15, 2017. (Tr. 37-43).

## IV. PLAINTIFF'S ASSIGNMENTS OF ERROR

In support of her appeal, Plaintiff claims that the Commissioner's final decision terminating her SSI benefits due to medical improvement is not supported by substantial evidence (R. Doc. 14 at 1). Plaintiff makes several specific assertions to this effect. First, Plaintiff argues that the ALJ improperly found that endometriosis,

6

panic disorder, and borderline intellectual functioning were no longer medically determinable impairments based on lack of objective findings within the relative period. (R. Doc. 14 at 11). Next, Plaintiff asserts that the ALJ decided without evidence that "chronic lower back pain" in the CPD actually referred to "sciatica." (R. Doc. 14 at 7). Plaintiff further argues that the ALJ abused his discretion in finding borderline personality disorder to be an improvement from bipolar disorder. (R. Doc. 14 at 7). Finally, Plaintiff argues that the Commissioner did not meet its burden to prove that Plaintiff's disabilities had ended, as the ALJ did not cite any evidence tending to prove that Plaintiff's back problems had decreased or mental ability had increased. (R. Doc. 14 at 12).

## V. DISCUSSION

### A. *Medically determinable impairments*

To begin his determination, the ALJ first lists Plaintiff's medically determinable impairments at the time of the CPD and at the time of the present determination. Of the impairments present at the CPD, the ALJ finds endometriosis, panic disorder, and borderline intellectual functioning are no longer medically determinable due to lack of standardized testing, diagnoses, and targeted treatment recommendations. (Tr. 34). Here, the ALJ relies on an absence of evidence to show that these impairments no longer exist. He does not explain why a lack of evidence should be considered proof positive of lack of impairment. That is, without further evidence, there is no reason to believe that records from 2017 onward would have shown testing, diagnoses, or treatment recommendations when the impairments had

7

been diagnosed prior to that date, especially for impairments like borderline intellectual functioning that require no treatment, or like panic disorder for which treatment may have remained unchanged in the intervening years. "Once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Buckley*, 739 F.2d at 1049. The ALJ has not shown that the previously-recognized impairments of endometriosis, panic disorder, and borderline intellectual functioning are no longer present.

In his assessment of current impairments, the ALJ also acknowledges that the record lists a history of anorexia but states that there are "no objective findings or treatment related to this impairment". (Tr. 34). The record does, however, state that Plaintiff takes medication that is often prescribed as an appetite stimulant and directly relates it to her history of anorexia. Records from North Oaks Medical Center, which the ALJ cites throughout his determination, say that Plaintiff "does have a long-standing history of anorexia, but does always take Megace." (Tr. 1333). The consultative examination report from Dr. Sandra Durdin lists the same medication (there referred to by its generic name "megestrol"). (Tr. 1314). The ALJ may determine from the evidence that this impairment is not severe, but it is incorrect to say there is no evidence of treatment in the record.

## B. Medical Improvement

The remainder of Plaintiff's arguments center around medical improvement and comparison to the CPD assessment. The Social Security Act explicitly states that,

8

absent exceptions that are not relevant here, a finding that a recipient is no longer entitled to disability benefits must be supported by substantial evidence both that "there has been any medical improvement" and that "the individual is now able to engage in substantial gainful activity." *Hallaron v. Colvin*, 578 Fed. Appx. 350, 353 (5th Cir. 2014) (citing 42 U.S.C. § 1382c(a)(4)(A)). The relevant regulations define "medical improvement" as "any decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [they were] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i). Furthermore, a decrease in severity "must be based on changes (improvement) in the symptoms, signs, or laboratory findings" related to the claimant's impairment. *Id.* The Commissioner must weigh the facts which formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant. *Taylor*, 742 F.2d at 255.

In the present decision, the section in which the ALJ addresses medical improvement is a single paragraph in which the ALJ does not discuss the signs, symptoms, or laboratory findings regarding Plaintiff's impairments at the time of the CPD. First, the ALJ summarizes Plaintiff's RFC at the time of the CPD: "the claimant was limited to sedentary work, could only sustain performance up to one-third of an eight-hour workday; and was likely to be absent from work an average of more than three times a month (Exhibit B1A, p.8)." (Tr. 36). In the remaining three sentences, the ALJ indicates that medical evidence of record shows no musculoskeletal abnormalities, no pulmonary abnormalities, and minimalized psychiatric treatment.

9

(Tr. 36). To illustrate the lack of abnormalities, the ALJ cites multiple documents in the medical record, the majority of which are records from emergency room ("ER") visits for complaints unrelated to the impairments at hand. For example, in citing records that show normal gait and full range of motion, the ALJ cites notes from an ER visit during which Plaintiff's chief complaints were cough, wrist pain, and diarrhea. (Tr. 36, ALJ's Decision; Tr. 1396, Exhibit B6F). Citing notes about normal pulmonary function, the ALJ cites an ER visit with chief complaint of lower back pain and bloating. (Tr. 36, ALJ's Decision; Tr. 1656, Exhibit B8F). And citing notes about Plaintiff's psychiatric treatment, the ALJ cites extremely brief notes in a follow-up ER visit regarding bronchitis and upper respiratory infection. (Tr. 36, ALJ's Decision; Tr. 1740, Exhibit B10F).[1]

While ER notes may indicate normal functioning in these areas, these exams were largely not focused on the impairments in question here and offer little in the way of evidence regarding signs and symptoms of Plaintiff's medically determinable impairments. This is especially true of mental health impairments, as ER doctors are likely not psychiatrists, much less familiar with a particular patient's presentations. "[I]t is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased. Indeed, one characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996). A seemingly unremarkable

---

[1] These examples are not an exhaustive list of the ALJ's citations to medical records, but they are representative of many similar citations.

10

psychiatric evaluation during an unrelated ER visit is not substantial evidence that mental health impairments are not present.

Even if ER notes from unrelated visits were enough evidence cumulatively to show medical improvement in physical impairments, the ALJ does not expand on Plaintiff's current symptoms beyond cursory statements about unremarkable findings, and more importantly does not explain *over what* they might be an improvement. Medical improvement for these purposes is defined as improvement in signs, symptoms, or laboratory findings associated with an impairment (20 C.F.R. § 416.994(b)(5)(ii)), but the ALJ does not expound on Plaintiff's signs or symptoms in this section of his decision, much less compare Plaintiff's current signs, symptoms, and lab results to those present at the time of the CPD. Rather, the ALJ compares his findings about Plaintiff's current impairments only to the prior RFC and not the evidence on which it was based.

The evidence in the prior claims file must be considered when the pending claim before the ALJ is based on a continuing disability review. (HALLEX I-2-1-13, 2014 WL 2600156). However, at the outset of his decision, the ALJ notes that he intentionally disregarded the prior claims file. (Tr. 32). Plaintiff's counsel requested at the hearing that the CPD claims file be associated with the present file (Tr. 117-18), but the ALJ declined to do so, concluding that the CPD itself "sets out the evidence, the impairments, and the [RFC] from the CPD claims file." (Tr. 32).[2] While

---

[2] Plaintiff's counsel again noted the absence of the prior claims file in his brief to the Appeals Council. (Tr. 687).

11

the CPD does indeed contain a brief list of Plaintiff's symptoms (Tr. 182), it does not attribute them to specific impairments or detail their severity, frequency, or any other specifics that would help determine whether there has been medical improvement.

The Commissioner must weigh the facts which formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant. *Taylor*, 742 F.2d at 255. Here, the ALJ did not have the facts upon which the prior determination was based, nor did he allow them into the record for this Court to review. Indeed, even if this particular CPD contained more detail, a CPD alone is not enough to make a proper comparison. "Although the CPD itself is not required to be in the record for an ALJ to make a finding of medical improvement, the relevant portions of a missing CPD file—such as work history, medical evidence, and consultative examination results—<u>must be reconstructed</u> in order for medical improvement to be found." *Ball v. Berryhill*, 2019 WL 2079841 at *7 (emphasis in original) (citing 20 C.F.R. § 416.994(b)(2)(iv)(E)).

Without descriptive detail in the CPD or relevant portions of the CPD claims file, this Court is unable to determine the relevant evidence upon which the CPD was based. Without more, the ALJ's determination that there was a decrease in medical severity of Plaintiff's impairments is largely conclusory and does not reflect a substantive comparison between the ALJ's current findings and the CPD's findings. Thus, this Court lacks an adequate basis on which to conclude that substantial evidence supports the Commissioner's finding that Plaintiff's medical condition has improved since the time of the CPD. A finding that a recipient is no longer entitled to

disability benefits must be supported by substantial evidence both that "there has been any medical improvement" and that "the individual is now able to engage in substantial gainful activity." *Hallaron v. Colvin*, 578 Fed. Appx. 350, 353 (5th Cir. 2014). Because there is not substantial evidence to support medical improvement, there can be no finding based on the current evidence that Plaintiff is no longer entitled to SSI benefits.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence did not show that there had been evidence of medical improvement of claimant's disability, as required to support the ALJ's termination of Plaintiff's benefits under the Social Security Act. Accordingly, the decision of the Commissioner is hereby **VACATED** and the case **REMANDED** for further review consistent with this opinion.

Baton Rouge, Louisiana, this 28th day of September, 2022

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**